UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PETER PATRICK LAFORTE,

Petitioner,

v.

R. GODWIN, Warden, et al.,

Respondents.

Case No.: 22-cv-69-MMA (NLS)

**ORDER DENYING FIRST AMENDED PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

Peter Patrick LaForte ("Petitioner") is a state prisoner proceeding *pro se* with a First Amended Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254. Doc. No. 4. Petitioner challenges his 2018 guilty plea and conviction in San Diego Superior Court case number SCD276593 for assault with a deadly weapon with a great bodily injury enhancement and admissions to priors, along with his resultant stipulated ten years and 4 months sentence for the instant offense and for an offense in a separate case. *Id.*; *see also* Doc. No. 16-16 at 25–26.

Petitioner raises three claims of federal error, alleging (1) the trial court interfered with his right to conflict-free counsel by incorrectly outlining his options and discouraging consultation with new counsel, (2) the trial court erred in permitting him to proceed to sentencing with an attorney who had a conflict of interest, and (3) trial counsel rendered ineffective assistance in advising Petitioner concerning his plea and by agreeing

with the trial court's incorrect statements about the consequences of consulting with new counsel.  Doc. No. 4-4 at 6–7; *see also* Doc. Nos. 4-3 at 2, 4-4 at 2, 5–7.

Respondent has filed an Answer and lodged the trial record.  Doc. Nos. 15, 16.  Respondent maintains habeas relief is unavailable because the state court rejection of each of Petitioner's three claims was reasonable.  Doc. No. 15 at 2.  In his separately-filed Response and Reply to the Answer, Petitioner denies Respondent's assertion the state court reasonably rejected his claims.  Doc. Nos. 21, 22.

## I. FACTUAL BACKGROUND

The following is taken from the state appellate court opinion affirming the judgment in *People v. LaForte*, D075609 (Cal. Ct. App. March 3, 2020).  *See* Doc. No. 16-1, Lodgment No. 1.  The state court factual findings are presumptively correct and entitled to deference in these proceedings.  *See Sumner v. Mata*, 449 U.S. 539, 545–47 (1981).

### A

According to the probation report, LaForte entered a retail store and attempted to conceal a bottle of vodka under his clothing.  A store employee witnessed the attempted concealment and confronted LaForte.  LaForte removed the bottle from under his clothing and struck the employee with it, causing him to suffer a laceration.

LaForte was charged by information with one count of assault with a deadly weapon or force likely to produce great bodily injury.  (§ 245, subd. (a)(1).)  The information alleged LaForte used a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)), and inflicted great bodily injury on the victim (*id.*, subd. (c)(8), § 12022.7, subd. (a)).  It further alleged he suffered three prior prison terms (§ 667.5, subd. (b)), one prior serious felony conviction (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and one prior strike conviction (§§ 667, subds. (b)–(i), 668, 1170.12).

LaForte pleaded guilty to the charged offense, admitted he inflicted great bodily injury on the victim, and admitted he suffered the prior serious felony conviction and the prior strike conviction.  In exchange, the remaining allegations were dismissed.  The plea contained a stipulated sentence of nine

2

years, plus 16 months for an offense in a separate case, for an aggregate term of 10 years four months.

B

At the outset of the sentencing hearing, LaForte's retained counsel informed the court he "made a mistake" while advising LaForte about the plea. He stated he previously believed—and advised LaForte—the offense to which LaForte pleaded guilty was a serious felony. (§ 1192.7, subd. (c).) But, based on LaForte's admission that he inflicted great bodily injury on the victim, the offense was a violent felony. (§ 667.5, subd. (c)(8).) According to LaForte's counsel, LaForte was "adamant" he would not plead guilty to a violent felony. Based on the mistake, LaForte's counsel asked the court to appoint new counsel to file a motion to withdraw the plea on LaForte's behalf.

The court initially granted the request and informed the parties it would appoint a public defender. However, it then advised LaForte it wanted him to "know the risks" of a plea withdrawal. It advised him his potential exposure would be greater than nine years—upwards of 20 years—if he were to "get() his wish and … withdraw his plea …." Further, it stated the prosecution was eager to prove the great bodily injury allegation and may be unwilling to negotiate a new deal if he were to withdraw his plea. LaForte replied, "I'll take the ten years. I'll take the ten years, four months."

The court did not immediately proceed to sentencing and instead responded: "I want you to talk to your lawyer for a few minutes and make sure it's what you want to do. If it's what you want to do, that is fine.... (¶) … (¶) (T)here is a lot on the line here for you. And I don't know what you want to do, sir, that is why I suggest you talk to your lawyer for a few minutes, see how you want to go forward. (¶) If you want me to appoint (a) public defender and look at withdrawing this plea, I will do that. If you want to do that, we will set the date for some time next week. If you don't want to do that and you want to go forward with the sentencing, tell your lawyer and we can do that too."

LaForte's counsel then stated he was uncomfortable with his continued representation of LaForte. He proposed the court schedule the hearing to appoint new counsel and, in the interim, he would consult with LaForte about his litigation options. The court agreed to put the matter over, as counsel requested, but LaForte interjected as follows: "(T)he things (counsel has) said to me have been incorrect, okay…. (¶) … (¶) I just want—I want—Let's finish this today, okay. (¶) … (¶) I mean, why don't I just say I'm going to

3

get sentenced today?  Why can't I just get sentenced today where this is over, okay?  You said what you said, I agree what you're saying.  Let me get the ten years, four months.  Let's—done.  We're done.  Then we're done.  I mean—I mean, we can be done.  (¶)  Why bring it back next week?  I'm saying—you know what I mean…. I said no, I don't want to discuss it, I'm ready.  I'll take ten years four months."

The court adjourned proceedings to permit LaForte and his counsel to confer.  According to LaForte's counsel, he advised his client during the adjournment that it was in his interests to withdraw the plea, but LaForte insisted he "was going to go forward against (counsel's) advice."  After the hearing resumed, the court asked LaForte and his counsel if they were prepared to proceed with sentencing and both answered in the affirmative.  The court then sentenced LaForte to nine years in prison for the charged offense, plus 16 months for the separate offense not at issue in this appeal.

C

After sentencing, LaForte's counsel filed a motion to be relieved as counsel and for appointment of a public defender.  The motion stated that LaForte claimed ineffective assistance of counsel based on his counsel's misadvice and, therefore, a conflict in representation existed.  It stated, "continu(ed) attempts (were) being made by (trial) counsel to try to assist (LaForte)" and, in fact, counsel had twice attempted to "bring him into court" to "make a knowing and intelligent decision as to his plea …."  It further stated LaForte "need(ed) to have … new counsel advise him what to do because he (was) not listening to (his counsel) even though (his counsel was) trying to help him."

At the hearing on the motion to withdraw as counsel and appoint a public defender, the court stated it was not inclined to relieve counsel, but it would "appoint public defenders," presumably as co-counsel.  LaForte interjected: "I didn't ask to get this court date, okay?  He did it, okay?  He did it.  I'm done.  I'm sentenced.  It's over.  He's the one doing all this right now.  (¶) … (¶)  For whatever reason, he wants to get a public defender to try to clean up his mess—whatever.  I don't know.  I don't know why he's doing it. But I didn't ask for this court date, and we're done.  I'm sentenced."

The court asked LaForte whether he was trying to withdraw his plea and he stated, "(n)o."  It then asked him whether he was trying to modify his sentence and he stated, "(n)o."  Finally, it asked him whether he wanted the court to calendar a hearing to address a motion to withdraw the plea and he stated,

4

"(n)o."  Following this colloquy, the court denied the pending motion to appoint a public defender.

Doc. No. 16-1 at 3–6.

## II. Procedural History

On January 24, 2019, Petitioner was sentenced to ten years and four months in prison.  Doc. No. 16-16 at 25–26.  Petitioner appealed to the California Court of Appeal, raising Claims One and Two presented here, which the appellate court denied in a reasoned opinion issued on March 3, 2020.  Doc. No. 16-1.  Petitioner then filed a petition for review in the California Supreme Court raising the same two claims, which on May 27, 2020, the state supreme court denied in an order which stated in full: "The petition for review is denied."  Doc. Nos. 16-2, 16-3.  Petitioner thereafter raised Claims One and Two in three separate habeas petitions in the San Diego County Superior Court, *see* Doc. Nos. 16-4, 16-5, 16-6, which on June 2, 2021, the superior court denied together on procedural grounds, noting the claims were identical to those raised on appeal and did not warrant reconsideration.  Doc. No. 16-8.  On July 26, 2021, the superior court summarily denied a fourth habeas petition again raising the same two claims, again noting the claims had been previously raised and rejected on appeal.  Doc. No. 16-9.  Petitioner thereafter filed both a habeas petition in the California Court of Appeal raising Claim One as well as a separate appeal of the superior court denial.  Doc. Nos. 16-10, 16-11.  On August 20, 2021, the appellate court denied the habeas petition, finding it "barred as repetitive," and on August 24, 2021, dismissed the appeal for lack of jurisdiction. Doc. Nos. 16-12, 16-13.  Petitioner thereafter filed a habeas petition in the California Supreme Court, raising only Claim Three presented here.  Doc. No. 16-14.  On November 17, 2021, the state supreme court summarily denied the habeas petition.  Doc. No. 16-15.

1   On January 6, 2022, Petitioner constructively filed his First Amended Petition

2   ("FAP"), the operative pleading in this action.  Doc. No. 4 at 11.[1]  On April 21, 2022,

3   Respondent filed an Answer and lodged the state court record.  Doc. Nos. 15, 16.  On

4   May 3, 2022, Petitioner constructively filed a Response to the Answer and on June 3,

5   2022, Petitioner constructively filed a Reply to the Answer, *see* Doc. Nos. 21, 22, which

6   the Court will consider together as Petitioner's Traverse.

### III. PETITIONER'S CLAIMS

8   (1) The trial court's interfered with Petitioner's right to conflict-fee counsel by

9   incorrectly outlining Petitioner's options and inappropriately discouraging Petitioner

10   from consulting with new counsel.  Doc. No. 4 at 6; Doc. No. 4-3 at 2–11.

11   (2) The trial court's error in permitting Petitioner to proceed to sentencing with an

12   attorney who had a conflict of interest without obtaining a waiver of the conflict violated

13   Petitioner's right to conflict-free counsel.  Doc. No. 4 at 7; Doc No. 4-4 at 2–5.

14   (3) Trial counsel rendered ineffective assistance in advising Petitioner concerning

15   his plea and by agreeing with the trial court's incorrect statements about the

16   consequences of consulting with new counsel.  Doc. No. 4-4 at 5–7.

### IV. DISCUSSION

18   **A.   Standard of Review**

19   A state prisoner is not entitled to federal habeas relief on a claim that the state

---

[1] While the FAP is filed-stamped January 24, 2022, the constructive filing date is January 1, 2022, the date Petitioner handed it to correctional officers for mailing to the Court.  Doc. No. 4 at 1, 11; *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001) ("Under the 'prison mailbox rule' of *Houston v. Lack*, 487 U.S. 266 (1988), a prisoner's federal habeas petition is deemed filed when he hands it over to prison authorities for mailing to the district court.")  On January 11, 2022, Petitioner constructively filed the initial federal Petition, which was filed stamped January 18, 2022.  *See* Doc. No. 1 at 1, 7.  Petitioner has since filed two requests to withdraw or disregard the FAP and proceed with the "original" petition.  *See* Doc. Nos. 11, 12.  Yet, while the FAP was the earlier signed and appears to the Court to be the "original" Petition, the FAP was received and filed stamped *after* the initial Petition and was thus labeled the FAP.  Because Petitioner indicates his intention to proceed with the earlier signed petition, *see e.g.* Doc. No. 11 at 1, which again is the FAP, and because Petitioner himself acknowledges the two petitions are "identical," *see* Doc. No. 12 at 1, the Court will proceed to consider the FAP as the operative pleading in this action.

6

court adjudicated on the merits unless the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (quoting 28 U.S.C. § 2254(d)(1)–(2)).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *Bruce v. Terhune*, 376 F.3d 950, 953 (9th Cir. 2004). With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338–39 (2006) (quoting 28 U.S.C. § 2254(e)(1)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter*, 562

U.S. at 102.

In a federal habeas action, "[t]he petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)). However, "[p]risoner pro se pleadings are given the benefit of liberal construction." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**B. Merits**

*1.   Claim One*

Petitioner first contends the trial court interfered with his right to conflict-free counsel by incorrectly outlining Petitioner's options and improperly discouraging Petitioner from consulting with new counsel. Doc. No. 4 at 6; Doc. No. 4-3 at 2–11. Respondent maintains the state court's rejection of Claim One was reasonable. Doc. No. 15-1 at 12–13.

Petitioner presented Claim One to the California Supreme Court in his petition for review, which the state supreme court denied without a statement of reasoning or citation to authority. *See* Doc. Nos. 16-2, 16-3. Petitioner had previously presented Claim One to the California Court of Appeal, which the state appellate court denied on the merits in a reasoned opinion. *See* Doc. No. 16-1.

The Supreme Court has repeatedly stated a presumption exists "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Wilson v. Sellers*, 584 U.S. ___, 138 S.Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.") Given the lack of any argument or grounds in the record to rebut this presumption, the Court will "look through" the California Supreme Court's silent denial to the reasoned opinion issued by the state appellate court on Claim One. *See Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them *no* effect- which simply 'looks through' them to the last

reasoned decision- most nearly reflects the role they are ordinarily intended to play.") (footnote omitted).

While Petitioner also later raised Claim One in various habeas petitions and/or appeals in both the state superior and appellate courts, the grounds cited in those denials barring the claim as repetitive, having been previously raised and rejected on appeal, or for lack of jurisdiction, do not impact the availability of federal review because the claim was addressed on the merits on direct review.  *See* Doc. Nos. 16-8, 16-9, 16-12, 16-13; *see Ylst*, 501 U.S. at 804 n.3 ("Since a later state decision based upon ineligibility for further state review neither rests upon procedural default nor lifts a pre-existing procedural default, its effect upon the availability of federal habeas is nil - which is precisely the effect accorded by the 'look-through' presumption.")

The state appellate court rejected Claim One in a reasoned decision as follows:

On appeal, LaForte contends his counsel's erroneous advice regarding the plea created a conflict of interest between him and his counsel.  He claims the error resulted in a conflict of interest because any plea withdrawal motion he might have filed in the trial court would have required him to argue he relied on his counsel's flawed advice.  This, in turn, would have required counsel to admit he rendered ineffective assistance, which LaForte describes as an obvious conflict of interest between attorney and client.

"'A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution.  This constitutional right includes the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client.'" (*People v. Rices* (2017) 4 Cal.5th 49, 65.) "'As a general proposition, such conflicts "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person or his own interests."'" (*People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).)  The guaranty of conflict-free counsel "protects the defendant who retains his own counsel to the same degree and in the same manner as it protects the defendant for whom counsel is appointed, and recognizes no distinction between the two." (*People v. Bonin* (1989) 47 Cal.3d 808, 834 (*Bonin*).)

In view of the alleged conflict of interest between LaForte and his counsel, LaForte contends the trial court's statements to him during the sentencing hearing "inaccurately," "misleadingly," and "intimidatingly" discouraged him from consulting with conflict-free counsel. We conclude there is no merit to this argument because the court did not discourage him from consulting conflict-free counsel. Quite the opposite, it stated it *would* "appoint (a) public defender to (the) matter" and "put (the case) on for appointment of (a) public defender"—exactly the relief that was requested. Even after LaForte stated he wished to be sentenced, the court commented: "If you want me to appoint (a) public defender and look at withdrawing this plea, I will do that. If you want to do that, we will set the date for some time next week. If you don't want to do that and you want to go forward with the sentencing, tell your lawyer and we can do that too."

As noted, the court advised LaForte of the risks he may face if he were to withdraw his plea, which was the ostensible next step if LaForte were to seek and obtain new counsel. However, it at no time suggested these risks would arise merely if LaForte were to consult with, or seek appointment of, new counsel. Rather, it stated only that the risks would arise if LaForte were to withdraw his plea. These statements were accurate and did not discourage LaForte from consulting conflict-free counsel. (*People v. Woodruff* (2018) 5 Cal.5th 697, 735 (court did not discourage counsel from applying for co-counsel where court stated it would "'consider anything (counsel) wish(ed) to bring to (its) attention'"); *People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002 (court did not "induce" defendant to withdraw self-representation motion by having a "serious" conversation with him and his counsel about the risks of self-representation).

Doc. No. 16-1 at 6–8.

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *Holloway v. Arkansas*, 435 U.S. 475, 481 (1978)); *see also Garcia v. Bunnell*, 33 F.3d 1193, 1195 (9th Cir. 1994) ("The Sixth Amendment's right to counsel requires effective assistance by an attorney, which has two components: competence and conflict-free representation.") (citing *Wood*, 450 U.S. at 271). In situations where a trial court knows or reasonably should know of the existence of a

conflict of interest, inquiry into the matter is warranted. *Sullivan*, 446 U.S. at 347; *see also Wood*, 450 U.S. at 272 and n. 18.

Again, at the outset of Petitioner's scheduled sentencing hearing defense counsel indeed indicated he "made a mistake" with the plea that had been entered and specified: "I was not aware that the way the plea was structured caused it to be a violent felony as opposed to a serious felony," noted Petitioner "was adamant, and I was also in agreement that I would not plead him to a violent felony" and stated as a result: "I think he needs to have a court-appointed lawyer attempt to set aside his plea." Doc. No. 4-5 at 9–10. Defense counsel agreed Petitioner was "requesting a motion to withdraw his plea" but stated: "I don't think I can be the one who does it." *Id.* at 10. To this, the trial court stated: "So we're going to have to appoint public defender to this matter to review it." *Id.* The trial court then advised Petitioner: "So Mr. La Forte understands that if he wishes -- if he gets his wish and gets to withdraw his plea, he can be looking at substantially more time." *Id.* at 11. The trial court further explained: "So if you get your wish and you get to withdraw your plea, what you're looking at . . . is 20 years" and warned Petitioner if the plea was withdrawn, the prosecutor might choose not to negotiate and go to trial instead. *Id.* at 11–12. The trial court then stated: "So Mr. La Forte, that is why I'm putting this on the record because sometimes you don't understand what is at stake. I want you to talk to your lawyer for a few minutes and make sure it's what you want to do. If it's what you want to do, that is fine. You may get that allegation stricken. You may get nine years some other way, I don't know. [¶] But I want you to know the risks today because I don't want you to tell me later, 'Please, Judge, give me back my ten years because I didn't know all of this could happen.'" *Id.* at 12–13.

After discussing the parameters of Petitioner's plea and the previously agreed upon sentence that went with the plea, the trial court stated:

> So that is why, Mr. La Forte, there is a lot on the line here for you. And I don't know what you want to do, Sir, that is why I suggest you talk to your lawyer for a few minutes, see how you want to go forward. [¶] If you want me to appoint public defender and look at withdrawing this plea, I will do that.

> If you want to do that, we will set the date for some time next week.  If you don't want to do that and you want to go forward with the sentencing, tell your lawyer and we can do that too.  [¶]  I just wanted to put on the record what the risks were in this case, in case you didn't know.

*Id.* at 13–14.  When defense counsel suggested Petitioner "[h]ave the Court put the matter over next week, appoint counsel.  I can come and see you at the jail and we can go further and talk over and over and over as to --," Petitioner replied: "I spoke to you and you -- the things you've said to me have been incorrect, okay."  *Id.* at 14.  Petitioner then indicated he wanted to "finish this today," and when the trial court said, "we can't do that, at this point," Petitioner then asked, "why don't I just say I'm going to get sentenced today," and stated: "You said what you said, I agree what you're saying.  Let me get the ten years, four months" and "[t]hen we're done."  *Id.* at 14–15.  Defense counsel indicated he was not comfortable with proceeding and the trial court provided counsel and Petitioner a short time to confer and decide whether to proceed.  Petitioner again asked if he could get sentenced today, to which the court stated "Maybe" and added: "If you guys all want to do that and everybody waives, we can maybe go forward."  *Id.* at 15–16.  After conferring, both Petitioner and counsel indicated readiness to go forward with sentencing.  *Id.* at 16.

Petitioner presently contends: "In framing [Petitioner's] situation, inaccurately, as a choice between being represented by the same attorney or (1) withdrawing his plea, (2) being stuck in a situation where the prosecutor would refuse to accept any other deal, (3) going to trial and being convicted, and (4) being sentenced to the highest possible term and thereby ending up with roughly twice as much prison time as he had agreed to in his plea, the court interfered with [Petitioner's] right to conflict-free counsel."  Doc. No. 4-3 at 5.

While the record plainly reflects the trial court repeatedly warned Petitioner withdrawing his plea could have consequences to Petitioner's ultimate conviction and length of his sentence and mentioned it along with the option to consult with new

counsel, it is evident the trial court did not at any time state were Petitioner to choose to merely *consult* with new counsel that his plea would necessarily be withdrawn or would result in a different conviction or potentially longer sentence.  Instead, the trial court clearly indicated new counsel could be appointed to "look at" the potential for a plea withdrawal, and that Petitioner was free to choose whether to explore that option or to proceed with sentencing, as follows: "If you want me to appoint public defender and *look at* withdrawing this plea, I will do that.  If you want to do that, we will set the date for some time next week.  If you don't want to do that and you want to go forward with the sentencing, tell your lawyer and we can do that too." *Id.* at 13–14 (emphasis added).

As such, the Court is not persuaded that "[t]he court's comments to [Petitioner] about his options prior to sentencing misleadingly and intimidatingly framed what was involved in simply consulting with a lawyer who did not have a conflict of interest" or that "[t]he court conflated the act of conflict-free representation with a worst-case-scenario hypothetical in a way that effectively stepped into the role of advising [Petitioner] and discouraged [Petitioner] from merely obtaining the consultation to which he was entitled."  Doc. No. 4-3 at 8–9.  Again, it is apparent the trial court did not "discourage[]" Petitioner from obtaining consultation with conflict-free counsel, as Petitioner was clearly given multiple opportunities to consult with new counsel, which Petitioner repeatedly declined. *See, e.g.*, Doc. No. 4-5 at 10, 13–14.  In the end, Petitioner insisted on proceeding to sentencing in accordance with the original plea and with current counsel despite the trial court's repeated offer to delay sentencing and provide Petitioner a chance to discuss the situation with new counsel and despite current counsel's similar entreaties to Petitioner. *See id.*  The Court finds no basis for a conclusion the trial court incorrectly outlined Petitioner's options or improperly discouraged Petitioner from consulting with new counsel and the record instead reflects the trial court, when apprised of the possibility of a conflict, duly conducted an inquiry into the matter. *Sullivan*, 446 U.S. at 347; *see also Wood*, 450 U.S. at 272 and n.18.  In any event, as discussed with respect to Claim Two below, the instant situation presented

only a *potential* conflict of interest given Petitioner ultimately chose to proceed with sentencing in accordance with his original plea and rejected the opportunity to explore the possibility of a plea withdrawal, thereby avoiding any actual conflict.

Accordingly, because Petitioner fails to demonstrate the state court adjudication of this claim was either contrary to, or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts, habeas relief is not warranted on Claim One.

2.   *Claim Two*

Next, Petitioner asserts the trial court's error in permitting Petitioner to proceed to sentencing with an attorney who had a conflict of interest without obtaining a waiver of the conflict violated his right to conflict-free counsel.  Doc. No. 4 at 7; Doc No. 4-4 at 2–5.  Respondent maintains the state court rejection of Claim Two was reasonable and did not involve an incorrect or unreasonable application of clearly established federal law. Doc. No. 15-1 at 14–17.

As he did with Claim One, Petitioner presented Claim Two to the California Supreme Court in his petition for review, which that court denied without a statement of reasoning or citation to authority.  *See* Doc. Nos. 16-2, 16-3.  Petitioner also previously presented Claim Two to the California Court of Appeal, which that court denied on the merits in a reasoned opinion.  *See* Doc. No. 16-1.  Again, given the lack of any argument or grounds in the record to rebut the presumption that the two decisions rest on the same grounds, the Court will "look through" the California Supreme Court's silent denial to the reasoned opinion issued by the state appellate court on Claim One.  *See Ylst*, 501 U.S. at 803-04; *see also Wilson*, 138 S.Ct. at 1193.  As with Claim One, while Petitioner also later raised Claim Two in various habeas petitions and/or appeals in both the state superior and appellate courts, the grounds cited in those denials barring the claim as repetitive, having been previously raised and rejected on appeal, or for lack of jurisdiction, do not impact the availability of federal review because this claim was

14

addressed on the merits on direct review.  *See* Doc. Nos. 16-8, 16-9, 16-12, 16-13; *see Ylst*, 501 U.S. at 804 n.3.

The state appellate court rejected Claim Two in a reasoned decision as follows:

In the alternative, LaForte claims the trial court should have held a hearing regarding the potential conflict of interest between him and his counsel and, if a conflict of interest existed, appointed new counsel or ensured LaForte knowingly, voluntarily, and intelligently waived the conflict.  (*Bonin*, *supra*, 47 Cal.3d at pp. 836–837 ("When the trial court knows, or reasonably should know, of the possibility of a conflict of interest on the part of defense counsel, it is required to make inquiry into the matter.... (¶) ... (¶)  After the trial court has fulfilled its obligation to inquire into the possibility of a conflict of interest and to act in response to what its inquiry discovers, the defendant may choose the course he wishes to take.").)  LaForte contends the court took none of these actions and, therefore, violated his constitutional right to conflict-free counsel.

For both state and federal purposes, a defendant seeking to obtain reversal of a judgment on grounds of conflict of interest "must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable the result of the proceeding would have been different."  (*People v. Mai* (2013) 57 Cal.4th 986, 1010, 1011 (*Mai*).)  An actual conflict "'is a conflict of interest that adversely affects counsel's performance.'"  (*Doolin*, *supra*, 45 Cal.4th at p. 418.)

Applying these standards, we conclude the record in the present case discloses no actual conflict of interest.  A potential conflict of interest arose when counsel misadvised LaForte regarding the plea, given that LaForte conceivably could have tried to withdraw his plea on grounds of misadvice of counsel and his counsel's self-interest might have impaired those efforts.  (See *Christeson v. Roper* (2015) 574 U.S. 373 (135 S.Ct. 891, 894) ("(A) 'significant conflict of interest' arises when an attorney's 'interest in avoiding damage to (his) own reputation' is at odds with his client's 'strongest argument ....'").)  However, this potential conflict of interest never ripened into an actual conflict of interest because LaForte never pursued or expressed a desire to pursue a motion to withdraw his plea.  (See *Mai*, *supra*, 57 Cal.4th at p. 1013 (defendant's conflict of interest claim failed because he was "unable to show on the appellate record that any potential conflict of interest actually materialized").)  On the contrary, over his counsel's advice, he repeatedly and

fervently disclaimed any intention of seeking to withdraw his plea, both at the sentencing hearing and the hearing on his counsel's motion to withdraw.

Further, the record discloses no grounds to conclude any alleged conflict adversely affected counsel's performance.  After LaForte's counsel realized he misadvised his client, he candidly disclosed the error to the court and requested the appointment of new counsel.  After LaForte informed the court he wished to proceed to sentencing, counsel again voiced his discomfort with proceeding and requested the appointment of new counsel.   And, while counsel ultimately consented to sentencing, he did so only after conferring with his client, who, according to counsel, stated he "was going to go forward (with sentencing) against (counsel's) advice."  LaForte's counsel even filed a postsentencing motion to withdraw as counsel and seek appointment of new counsel, citing alleged ineffective assistance as the grounds for the request.  On this record, there is no basis for us to conclude LaForte's counsel "'pulled his punches,' i.e., … failed to represent defendant as vigorously as he might have, had there been no conflict."  (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 310 (*Gonzales*).)

 LaForte also has not demonstrated a reasonable probability the result of the proceeding would have been different but for the alleged conflict of interest.  Citing *People v. Easley* (1988) 46 Cal.3d 712, and *People v. Mroczko* (1983) 35 Cal.3d 86, LaForte argues the prejudice standard applicable to conflict of interest claims "does not depend on the outcome of the case as in a more typical (federal) ineffective-assistance-of counsel analysis," and is instead satisfied so long as the defendant establishes there was an actual conflict of interest.  However, our Supreme Court disapproved the *Easley* and *Mroczko* decisions, and many others, to the extent they imposed a standard for conflict of interest claims different from the federal ineffective assistance of counsel standard.  (*Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.)  As the law currently stands, "both standards involve a consideration of prejudice in the outcome.  (*Id.* at p. 421.)

LaForte has not established any such prejudice in the outcome.  As discussed, he repeatedly rejected counsel's advice to pursue a plea withdrawal in lieu of sentencing.  Given LaForte's determination to be sentenced, we cannot say it was reasonably probable the outcome would have been different in the absence of the alleged conflict of interest.  (*Mai*, *supra*, 57 Cal.4th at pp. 1022, 1023 (alleged conflict of interest not prejudicial where the alleged harm resulted from "defendant's clear, consistent, cogent, and articulately expressed wish to forego" the presentation of mitigating evidence); *Gonzales*, *supra*, 52 Cal.4th at p. 310 (defendant who testified over allegedly conflicted

trial counsel's advice failed to establish prejudice by arguing "he might have accepted (a conflict-free) attorney's reasonable advice not to testify").

Doc. No. 16-1 at 8–11.

Petitioner asserts: (1) "[t]he court made no reference to the existence of a conflict and did nothing to inquire whether [Petitioner] understood or waived that conflict," (2) "still failed to discuss the existence of that conflict" at a post-sentencing hearing concerning counsel's motion to be relieved as counsel and for the appointment of new counsel, and (3) "the fact that sentencing went forward, even while a clear basis existed to attack the plea, without [Petitioner] conferring with an unconflicted attorney in a way that could have given him a clear picture of his rights and options" resulted in prejudice. Doc. No. 4-4 at 3–5.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50 (citing *Holloway*, 435 U.S. at 487–91). "To establish a violation of the right to conflict-free counsel, the petitioner must show either that (1) in spite of an objection, the trial court failed to allow him the 'opportunity to show that potential conflicts impermissibly imperil his right to a fair trial;' or (2) that an actual conflict of interest existed." *Alberni v. McDaniel*, 458 F.3d 860, 869–70 (9th Cir. 2006) (quoting *Sullivan*, 446 U.S. at 348). In *Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995), the Ninth Circuit further indicated:

> In the absence of an "actual" conflict which squarely places the interests of the client in opposition to those of the attorney, and is likely to compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty, the [*Sullivan*] standard cannot be met. If a mere "potential" or "theoretical" conflict does affect an attorney's representation in a particular case, the defendant is not without recourse. However, he cannot rely on [*Sullivan*] and obtain relief merely upon a showing of "adverse effect," but must instead make the showing required by *Strickland* that counsel's performance was objectively unreasonable and that

1    he suffered prejudice as a result.  *See Strickland*, 466 U.S. at 692–94, 104

2    S.Ct. at 2067–68.

3    *Id.* at 827.

4          In this instance, it appears a conflict of interest could and likely would have arisen

5    in the event Petitioner decided to withdraw the plea, given counsel's admitted error and

6    inaccurate advice to Petitioner in entering the plea.  Had Petitioner sought to withdraw

7    the plea without obtaining new counsel, trial counsel would have had a conflict.

8    However, such a situation *never occurred* in Petitioner's case, and the state court

9    reasonably and accurately found as much.  *See* Doc. No. 16-1 at 9 ("A potential conflict

10   of interest arose when counsel misadvised LaForte regarding the plea, given that LaForte

11   conceivably could have tried to withdraw his plea on grounds of misadvice of counsel

12   and his counsel's self-interest might have impaired those efforts. . . . However, this

13   potential conflict of interest never ripened into an actual conflict of interest because

14   LaForte never pursued or expressed a desire to pursue a motion to withdraw his plea.")

15         Thus, the Court cannot conclude there was an "actual conflict of interest" given

16   Petitioner clearly and emphatically chose to proceed with the plea and firmly rejected the

17   trial court's repeated offer of new counsel and potentially withdrawing his plea.  *Sullivan*,

18   446 U.S. at 348.  Nor does Petitioner persuasively show any such potential conflict

19   "adversely affected his lawyer's performance."  *Id.*  Again, as the state court accurately

20   and reasonably observed, once the error was discovered Petitioner's counsel "candidly

21   disclosed the error to the court and requested the appointment of new counsel," thereafter

22   "voiced his discomfort with proceeding and requested the appointment of new counsel"

23   after Petitioner indicated he intended to proceed with sentencing, and "while counsel

24   ultimately consented to sentencing, he did so only after conferring with his client," and

25   additionally "filed a post sentencing motion to withdraw as counsel and seek appointment

26   of new counsel, citing alleged ineffective assistance as the grounds for the request."  Doc.

27   No. 16-1 at 10.  As such, given the "absence of an 'actual' conflict which squarely places

28   the interests of the client in opposition to those of the attorney, and is likely to

compromise a reasonable attorney's ability to comply with his legal and ethical obligation to represent his client with undivided loyalty," Petitioner fails to show a violation of his right to conflict-free counsel.  *Bonin,* 59 F.3d at 827.

Because it is evident Petitioner's contention fails for lack of merit, Petitioner therefore fails to demonstrate the state court adjudication of Claim Two was either contrary to, or an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts.  As such, habeas relief is not available on Claim Two.

### 3.     Claim Three

Finally, Petitioner contends trial counsel rendered ineffective assistance in advising Petitioner concerning his plea and by agreeing with the trial court's incorrect statements about the consequences of consulting with new counsel.  Doc. No. 4-4 at 5–7. Respondent maintains the state supreme court's rejection of Claim Three on the merits was reasonable.  Doc. No. 15 at 2; Doc. No. 15-1 at 17–19.

Petitioner raised this contention solely before the California Supreme Court in a state habeas petition, which the state supreme court denied without a statement of reasoning or citation to authority.  Doc. Nos. 16-14, 16-15.  Without any evidence suggesting otherwise, the Court must presume the state supreme court adjudicated Claim Three on the merits.  *See Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.")  Additionally, given the state court denied Petitioner's ineffective assistance of counsel claim without any statement of reasoning, to warrant habeas relief Petitioner must show there was "no reasonable basis" for the state supreme court's denial.  *See id.* at 98 ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.")

Under the clearly established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), "a defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009), citing *Strickland*, 466 U.S. at 687. The United States Supreme Court has held "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it.")

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. Moreover, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. To demonstrate prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Additionally, when a federal habeas court is reviewing a claim of ineffective assistance of counsel previously adjudicated on the merits by a state court:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1),

"an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, *supra*, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 105.

Petitioner contends trial counsel rendered constitutionally ineffective assistance in two respects, as counsel not only failed to correctly advise Petitioner on the plea, but also erred in agreeing with the trial court's incorrect statements that appointing new counsel to consult with Petitioner "was equivalent to withdrawing his plea and exposing himself to substantially more time." Doc. No. 4-4 at 5.

With respect to Petitioner's first allegation of ineffective assistance, at the outset of the sentencing hearing, trial counsel admitted he made a "mistake" in advising Petitioner on the guilty plea that had been entered and stated his belief that Petitioner needed new counsel to attempt to set aside the plea. *See* Doc. No. 4-5 at 9. Even were the Court to assume trial counsel's admitted error constitutes the requisite deficient performance under *Strickland*, the Court finds Petitioner's claim of ineffective assistance of counsel nonetheless fails for lack of prejudice. *Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Mirzayance*, 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel.") (citing *Strickland*, 466 U.S. at 687). In cases concerning allegations of ineffective assistance of counsel with respect to a guilty plea, the Supreme Court has held the prejudice determination "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the

plea process," and "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To this end, Petitioner submits a January 6, 2022, declaration in which he states he would have gone to trial were it not for trial counsel's erroneous advice as to the terms of the guilty plea and repeats this assertion in May 3, 2022, and June 2, 2022, declarations attached to the Traverse. *See* Doc. No. 4-6 at 2; *see also* Doc. No. 21 at 27–28, Doc. No. 22 at 27–28. Yet, as Respondent correctly points out, *see* Doc. No. 15-1 at 18, Petitioner failed to present this evidence to the California Supreme Court when it adjudicated his ineffective assistance of counsel claim in the state habeas petition. Indeed, Petitioner's initial declaration was signed on January 6, 2022, well after Petitioner constructively filed the August 25, 2021, state habeas petition in the California Supreme Court and the declaration was therefore not before the state court at the time Petitioner's ineffective assistance claim was considered and decided. *See* Doc. No. 4-6; Doc. No. 16-14 at 6. Because Claim Three was adjudicated on the merits by the state court, this Court cannot consider Petitioner's declaration in reviewing the reasonableness of the state court decision under section § 2254(d). *See Pinholster*, 563 U.S. at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *see also* 28 U.S.C. § 2254(d)(2) (habeas relief on claim adjudicated on the merits in state court is unavailable unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.")

In any event, as Respondent again correctly points out, *see* Doc. No. 15-1 at 18, Petitioner's contention is also plainly belied by the trial record, as Petitioner was clearly advised of counsel's error, refused multiple offers to consult with new counsel and potentially withdraw the plea and instead insisted on proceeding to sentencing on the original plea that very same day. *See* Doc. No. 4-5 at 10, 13–14. At no time did Petitioner indicate to the trial court he wished to go to trial but instead vociferously

rejected any offer to do anything other than proceed with sentencing that same day. *See id.* Thus, given the lack of any record evidence trial counsel's alleged errors "affected the outcome" of Petitioner's plea process such that he would have gone to trial instead of proceeding with the guilty plea, this contention fails for lack of demonstrated prejudice. *Hill*, 474 U.S. at 59 ("[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.")

Nor does Petitioner's second contention fare any better. Again, Petitioner asserts trial counsel rendered prejudicially deficient performance when counsel agreed with the trial court that appointing new counsel to consult with Petitioner "was equivalent to withdrawing his plea and exposing himself to substantially more time." Doc. No. 4-4 at 5. As an initial matter and as thoroughly discussed in the adjudication of Claim One, the trial court did not indicate that simply consulting with new counsel was in any way "equivalent to" a plea withdrawal that would expose Petitioner to additional time. Instead, the trial court informed Petitioner new counsel could be appointed to "look" at withdrawing the plea while warning Petitioner that were he to ultimately seek to *withdraw* the plea, such an action could expose Petitioner to more time. Again, when trial counsel advised the trial court of his error and asked for the appointment of new counsel to withdraw the plea, the trial court stated: "So we're going to have to appoint public defender to this matter to *review it*," and then advised Petitioner: "So Mr. La Forte understands that if he wishes -- *if he gets his wish and gets to withdraw his plea*, he can be looking at substantially more time." Doc. No. 4-5 at 10–11 (emphasis added). As the record plainly reflects, the trial court clearly distinguished between those two events and did not state that simply appointing new counsel nor Petitioner consulting with such newly appointed counsel was tantamount to withdrawing his guilty plea. Similarly, the trial court later informed Petitioner: "If you want me to appoint public defender and *look at* withdrawing this plea, I will do that. If you want to do that, we will set the date for some time next week. If you don't want to do that and you want to go forward with the

sentencing, tell your lawyer and we can do that too." *Id.* at 13–14 (emphasis added). Given the trial court clearly and correctly explained these possibilities to Petitioner and did not indicate that simply appointing new counsel was the same as or somehow equivalent to Petitioner choosing to withdraw his guilty plea, there is no support for a conclusion counsel erred in voicing any agreement with the trial court's explanation.

However, even were Petitioner somehow able to demonstrate counsel's performance was deficient during the events surrounding the plea hearing, Petitioner fails to demonstrate prejudice for the reasons previously discussed, namely because there is no indication from the record before the state court that Petitioner would have gone to trial but for the asserted errors by counsel or that any such errors affected the outcome of the plea process.[2]  *See Hill*, 474 U.S. at 59.

Because it is readily apparent the state supreme court could have reasonably rejected Petitioner's claim of ineffective assistance of trial counsel for lack of *Strickland* prejudice, habeas relief is not available on Claim Three.  *Richter*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."); *Mirzayance,* 556 U.S. at 122 ("[A] defendant must show both deficient performance by counsel and prejudice in order to prove that he has received ineffective assistance of counsel.") (citing *Strickland*, 466 U.S. at 687).

---

[2] In his January 6, 2022, declaration, Petitioner indicates counsel agreed with the trial court's erroneous statement in an off the record discussion they had between themselves, as follows: "At sentencing the Judge paused court so I could discuss my case with counsel.  That is when counsel agreed with the Judge, that appointing the public defender to consult was equivalent to withdrawing my plea and exposing myself to substantially more time."  Doc. No. 4-6 at 2–3.  Petitioner repeats this assertion in the declarations submitted with the Traverse.  *See* Doc. No. 21 at 27–28, Doc. No. 22 at 27–28. However, as discussed above, the Court cannot consider these declarations because this evidence was not before the state court at the time Petitioner's ineffective assistance claim was considered and decided and Petitioner has not satisfied § 2254(d).  *See Pinholster*, 563 U.S. at 181; *see also* 28 U.S.C. § 2254(d)(2).

22-cv-69-MMA (NLS)

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" except where "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254. "A certificate of appealability should issue if 'reasonable jurists could debate whether' (1) the district court's assessment of the claim was debatable or wrong; or (2) the issue presented is 'adequate to deserve encouragement to proceed further.'" *Shoemaker v. Taylor*, 730 F.3d 778, 790 (9th Cir. 2013) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In this instance, the Court declines to issue a certificate of appealability, as reasonable jurists would not find debatable or incorrect the Court's conclusion habeas relief is not warranted on any of the three claims presented in the First Amended Petition, nor does the Court find any of the issues presented deserve encouragement to proceed further. *See* 28 U.S.C. 2253(c); *Slack*, 529 U.S. at 484.

## VI. CONCLUSION AND ORDER

For the reasons discussed above, the Court **DENIES** the First Amended Petition for a Writ of Habeas Corpus and **DENIES** a Certificate of Appealability.

**IT IS SO ORDERED.**

Dated: December 21, 2022

HON. MICHAEL M. ANELLO
United States District Judge